558 S.E.2d 324

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Frances Martha HEADLEY, Defendant Below, Appellant.**

No. 29065.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2001.

Decided Nov. 28, 2001.

---

526

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Senior Assistant Attorney General, Charleston, for Appellee.

Michele L. Rusen, Parkersburg, Lee F. Benford, II, Ravenswood, for Appellant.

PER CURIAM:

Francis M. Headley appeals her conviction in the Circuit Court of Wood County for the misdemeanor offense of involuntary manslaughter. Ms. Headley was sentenced to serve a term of 1 year in the Wood County Correctional Center. She was also ordered to make restitution to the estate of her victim, Brian M. Evans, in the amount of $187,209.29 for medical treatment that Mr. Evans received immediately prior to his death.

Although Ms. Headley advances several issues in her appeal to this Court, our resolution of a single issue is dispositive. Specifically, we find that Ms. Headley offered sufficient evidence of self-defense so that the State was required to prove beyond a reasonable doubt that Ms. Headley did not act in self-defense when she used deadly force against Mr. Evans. We also find that the State failed to meet its evidentiary burden on the issue of self-defense. Therefore, Ms. Headley's conviction is reversed and we remand this case for entry of a judgment of acquittal.

I.

Mr. Evans and Ms. Headley lived together in Parkersburg, West Virginia, and had a history of domestic violence. Court records, police reports, and hospital documents show that there were at least four incidents of domestic violence involving the couple in the months immediately preceding the incident in which Mr. Evans was injured and later died.

On April 5, 1998, the Parkersburg police were called to the couple's apartment. Mr. Evans had punched Ms. Headley in the face, but she declined to file charges. Approximately 2 weeks later, Ms. Headley shoved Mr. Evans in the presence of police; she later pled guilty to domestic battery. On May 26, 1998, a witness saw Mr. Evans knock Ms. Headley to the ground and kick her several times. Mr. Evans was charged with domestic battery but the case had not gone to hearing at the time of his death. On July 3, 1998, Mr. Evans hit Ms. Headley while the couple was in a convenience store. Mr. Evans was again charged with domestic battery, but this case also had not gone to hearing at the time of Mr. Evans' death.[1]

In a statement given to the police, Ms. Headley described what happened on Octo-

---

1. At her criminal trial, Ms. Headley was prevented by the trial court from presenting these incidents of domestic violence to the jury.

ber 6, 1998. Both she and Mr. Evans had been drinking heavily, and they argued over money that Ms. Headley had given to their landlord for past due rent. According to Ms. Headley, Mr. Evans wanted to use the money to purchase cocaine. Ms. Headley left the residence and went to a friend's apartment to get away from Mr. Evans, and to "let him cool off."

When Ms. Headley returned home in the early morning hours of October 6, 1998, Mr. Evans began screaming and breaking things. According to Ms. Headley, she asked Mr. Evans to leave—but he refused. The couple then began to fight physically. Mr. Evans wrestled Ms. Headley to the ground and began punching her in the face and in the back of the head. During the struggle, Ms. Headley received injuries and severe bruising to her face, arms, and feet. She was later diagnosed with a broken nose.

Ms. Headley attempted to escape, but she could not make it to the door. She retreated into the kitchen and grabbed a knife. She told Mr. Evans that if he came near her again, she was going to use the knife. According to Ms. Headley, Mr. Evans told her that he wasn't afraid of the knife and he wasn't afraid of her. Mr. Evans came towards Ms. Headley and began to push her. Then she stabbed him.

After stabbing Mr. Evans, Ms. Headley tried to use the phone to call the police, but Mr. Evans, although injured, pulled the phone out of the wall. Mr. Evans hit Ms. Headley with the telephone and threw the phone[2] across the room; then Mr. Evans collapsed in a heap on the floor. Mr. Evans did not recover from his stab wounds and died on October 28, 1998. Ms. Headley was subsequently indicted for murder.

In May of 2000, Ms. Headley's trial began in the Circuit Court of Wood County. The trial court ruled that Ms. Headley would not be allowed to put on evidence in support of her theory of self-defense. As a result of the judge's ruling, Ms. Headley was not allowed to offer: (a) evidence of her prior history of domestic violence with Mr. Evans, (b) testi-

mony from a domestic violence expert, and (c) jury instructions on the issue of self-defense. The State was permitted to offer testimony that while holding a knife, Ms. Headley had threatened to kill Mr. Evans.

The jury found Ms. Headley guilty of involuntary manslaughter. Ms. Headley was sentenced to 1 year in the county jail and ordered to pay restitution of $187,209.29 for Mr. Evans' medical bills. Though Ms. Headley has discharged her 1 year sentence, she appeals the conviction and the order of restitution.

## II.

■ Ms. Headley contends that the State failed to introduce sufficient evidence to establish beyond a reasonable doubt that she did not act in self-defense in causing the death of Mr. Evans.

■ Recently, this Court clarified the appellate standard of review where a criminal defendant challenges the sufficiency of the evidence supporting her conviction:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ This Court went on to explain the difficult burden a defendant bears when challenging a conviction on the sufficiency of the evidence. The Court has said that:

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence,

---

**2.** A witness testified at Ms. Headley's trial to finding a closet that contained several broken telephones.

whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syllabus Point 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ The offense of involuntary manslaughter is committed when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act unlawfully causes the death of another. Syllabus Point 7, *State v. Barker*, 128 W.Va. 744, 38 S.E.2d 346 (1946).

■ The law of self-defense is well settled. "[A] defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself." *State v. W.J.B.*, 166 W.Va. 602, 606, 276 S.E.2d 550, 553 (1981).

The uncontroverted evidence at trial was that Ms. Headley stabbed Mr. Evans after he had attacked her, held her down, and punched her in the face and head, breaking her nose. Mr. Evans outweighed Ms. Headley by over a hundred pounds. Earlier that year, Ms. Headley had moved away from Mr. Evans, but Mr. Evans begged her to return and she relented. In the early morning hours of October 6, 1998, Mr. Evans had already succeeded in breaking Ms. Headley's nose. Even after Ms. Headley had armed herself with a knife, Mr. Evans remained undeterred and continued to come towards Ms. Headley. Ms. Headley reasonably believed that she could save herself from further violence only by using deadly force.

From the record, it is clear that Ms. Headley was in imminent danger and that she feared serious bodily harm. And, a review of the evidence, including the photographs of Ms. Headley, substantiate that such fear was justified. Therefore, Ms. Headley was not engaged in an unlawful act when she caused the death of Mr. Evans. When Ms. Headley stabbed Mr. Evans, she was acting in self-defense and "[w]e have recognized that the defense of self-defense constitutes a complete justification for a homicide." *State v. Kirtley*, 162 W.Va. 249, 262, 252 S.E.2d 374, 381 (1978). *See also, State v. Bowyer*, 143 W.Va. 302, 313–14, 101 S.E.2d 243, 249 (1957); *State v. Foley*, 128 W.Va. 166, 35 S.E.2d 854 (1945).

■ The State offered no evidence that contradicted Ms. Headley's version of events. "Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syllabus Point 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978).

After careful examination of the record, we conclude that Ms. Headley was entitled to use the defense of self-defense, and that the State failed to prove beyond reasonable doubt that Ms. Headley did not act in self-defense. We therefore vacate the circuit court's judgment and remand the case for entry of a judgment of acquittal.

Because we have vacated the lower court's ruling, it is not necessary to reach Ms. Headley's other assignments of error. However, this Court is troubled by the lower court's failure to allow Ms. Headley to fully litigate her theory of the case.[3]

The evidentiary threshold that must be satisfied to justify the giving of an instruction that embodies a litigant's theory of the case is minimal. The threshold that must be met in order to warrant a jury instruction on a

---

**3.** This omission is especially troubling in this case because the jury specifically asked during its deliberations whether self-defense was an issue.

particular theory, such as self-defense, would necessarily be particularly modest in criminal cases where personal liberty as opposed to a mere property interest is at stake.[4] This Court has long held that "[w]here [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested so to do." Syllabus Point 7, *State v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918). *In accord,* Syllabus Point 3, *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854 (1945).

As this Court noted in Syllabus Point 2 of *Snedeker v. Rulong,* 69 W.Va. 223, 71 S.E. 180 (1911):

> If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory.

*In accord,* Syllabus Point 2, *Moran v. Atha Trucking, Inc.,* 208 W.Va. 379, 540 S.E.2d 903 (1997).

 Even where the evidence is scant, the trial court has a duty to allow a defendant to get her theory before the jury.[5] "It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense." *State v. Baker,* 177 W.Va. 769, 771, 356 S.E.2d 862, 864 (1987) (*quoting* Syllabus Point 5, in part, *State v. McMillion,* 104 W.Va. 1, 138 S.E. 732 (1927)).

As this Court has noted, "[i]t is difficult to imagine a situation where proper instructions to a jury on a theory supported by competent evidence would result in reversible error. On the other hand, refusing to instruct the jury on a litigant's theory of the case when it is supported by competent evidence prevents consideration of that theory by the jury, and thus invites reversal." *Danco, Inc. v. Donahue,* 176 W.Va. 57, 60, 341 S.E.2d 676, 679 (W.Va.1985).

### III.

The evidence in this case supports the right of the defendant to present to the jury the defense of self-defense, and that the jury be properly instructed on self-defense. Because of the court's failure to allow the defendant to pursue self-defense, and the State's failure to carry its burden on the issue of self-defense, Ms. Headley's conviction and sentence for involuntary manslaughter must be vacated. The case is remanded for an entry of a judgment of acquittal. *See State v. Baker,* 177 W.Va. 769, 771, 356 S.E.2d 862, 864 (1987) ("In view of the fact that the defendant was entitled to a judgment of acquittal, no retrial is permitted[.]"). *See also State v. Cook,* 204 W.Va. 591, 515 S.E.2d 127 (1999) (Second degree murder conviction vacated and remanded for entry of judgment of acquittal).

Vacated and Remanded.

---

**4.** As this Court observed more than one hundred years ago, "If there is any evidence before the jury tending to prove a case supposed in an instruction asked for, and the instruction propounds the law correctly, it should be given.... In such a case, it is best and safest to give the instruction." *Danco, Inc. v. Donahue,* 176 W.Va. 57, 60, 341 S.E.2d 676, 679 (1985) (quoting *State v. Betsall,* 11 W.Va. 703, 729 (1877), *overruled on other grounds,* Syllabus Point 1, *State v. Humphreys,* 128 W.Va. 370, 36 S.E.2d 469 (1945)).

**5.** It is elementary that the court should instruct the jury upon every material question upon which there is any evidence deserving of any consideration whatever. The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. That is a question within the exclusive province of the jury.... It is the duty of the court to instruct the jury in regard to any included offense which the evidence tends to prove.... It is undoubtedly the rule that, where there is any evidence from which a reasonable inference may be drawn that the crime of which the defendant was convicted was of a lesser degree, it is prejudicial error to withdraw from the jury the consideration of such evidence and confine the instructions to the crime [charged]. *People v. Burns,* 88 Cal.App.2d 867, 871–872, 200 P.2d 134, 136–137 (1948) (internal citations and quotations omitted).